CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
10/16/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:25-cr-00011 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| JAMES DEMETRICK PERRY, ) | By:  Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

    While conducting surveillance at a motel in Wytheville, local sheriff's deputies encountered Defendant James Demetrick Perry ("Perry"), who, they soon discovered, unlawfully possessed drug paraphernalia and a gun inside one of the rooms. Perry, who was charged federally as a result, now moves to suppress evidence obtained during the deputies' warrantless search of this motel room, arguing that it violated the Fourth Amendment. He also seeks to suppress incriminating statements that he made following his arrest, asserting that these statements were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were otherwise involuntary under the Fifth Amendment.

    The court held an evidentiary hearing on Perry's motion. Because the government established that Perry waived his Fourth Amendment protection against warrantless searches and seizures as a condition of his state probation, the search at issue was not unlawful. In any event, the arresting deputies relied on that waiver in good faith to conduct the search. The government, moreover, established that Perry was properly advised of his *Miranda* rights, and that his statements were voluntary. Accordingly, the court will deny Perry's motion in full.

## I. BACKGROUND[1]

On July 31, 2023, Sergeant Keith Goines ("Sgt. Goines") of the Wythe County Sheriff's Office was conducting surveillance of the Red Roof Inn in Wytheville, Virginia, to serve an arrest warrant on another individual. (Gov't's Resp. at 3 [ECF No. 53]; Hr'g Tr. ("Tr.") 7:20–22.) After receiving a tip that Perry, who was wanted on warrants for probation violations and failure to appear,[2] was also present at the motel, Sgt. Goines contacted then-Captain Chris Terry ("Captain Terry"), the lead investigator on Perry's case. (Tr. 9:17.) Captain Terry testified that he had previously confirmed with Perry's state probation officer that Perry had waived his Fourth Amendment rights against warrantless searches and seizures as a condition of his probation, and he relayed as much to Sgt. Goines. (Tr. 19:2–15, 50:24–51:4.) Minutes later, Goines entered the motel and knocked on the door of Room 251, where he suspected Perry was staying. (Tr. 9:15–10:6.) Captain Terry, who was nearby, eventually made his way to Room 251 to back-up Goines. (Tr. 54:5–55:3.)

Another occupant of the room, later identified as Elizabeth Harvey, answered the door. (Tr. 8:18.) After initially denying that Perry was in the room, she admitted that Perry was hiding in the bathroom and that he had a gun. (Tr. 54:7–12; Gov'ts Resp. at 2; Def.'s Mot. Suppress at 2–3.) Sgt. Goines escorted Ms. Harvey and another female occupant from the room, drew his firearm, and negotiated with Perry to exit the bathroom. (Tr. 10:6–13:9; Gov't's Resp. at 3.) By this time, Captain Terry and two other deputies had arrived on scene. (Tr. 13:17; Gov't's

---

[1] The following facts come from the parties' briefs as well as the testimony from the August 21, 2025 hearing on the motion to suppress. Perry did not offer any evidence at the hearing, leaving the government's witnesses' testimony unrebutted.

[2] The capias for the probation violations was issued November 3, 2022, and the capias for failure to appear was issued November 30, 2022. (ECF Nos. 70-1, 70-3.)

Resp. at 3.) Perry eventually emerged from the bathroom—walking backwards at Sgt. Goines's instruction—and was arrested at the threshold of Room 251. (Tr. 13:13–18.) Captain Terry and Sgt. Goines testified that they holstered their weapons, placed Perry in handcuffs, and then walked Defendant approximately 25 feet to the end of the motel's second-floor hallway. (Tr. 13:12–18, 14:3–10, 34:24–35:1.) At that point, Captain Terry read Perry his *Miranda* rights. (Tr. 14:6–10, 56:8–10; Gov'ts Resp. at 3.) Sgt. Goines then searched Perry and recovered .44-caliber ammunition in his pockets. (Tr. 13:24, 56:6; Gov'ts Resp. at 3.) The deputies then asked Perry if he had a firearm in the room, and Perry responded that he did. (Tr. 14:16–20.) Accordingly, they entered the motel room and retrieved a Nike bag that contained a .44-caliber handgun and additional ammunition. (Tr. 15:12–17; Def.'s Mot. Suppress at 3; Indictment at 1 [ECF No. 23].) During an interview at the sheriff's office following his arrest, Perry admitted to selling at least 50 ounces of methamphetamine in the last six months and destroying approximately 100 grams of methamphetamine in the motel bathroom prior to his arrest. (ECF No. 53-4, at 4.)

Perry was subsequently indicted and charged with (1) possession of a firearm by a felon, (2) possession with intent to distribute 50 grams or more of methamphetamine, and (3) possession of a firearm in furtherance of a drug trafficking crime. (Indictment at 1.) On May 14, 2025, Perry filed a motion to suppress (1) evidence seized during the warrantless search of the motel room—specifically, the .44 caliber pistol—and (2) statements he made at the time of his arrest about possessing the gun. (Def.'s Mot. Suppress at 2.)[3] On August 21, 2025, the

---

[3] Initially, Perry also sought to suppress statements made before the magistrate on July 31, 2023, and later, to investigating deputies at the sheriff's office, arguing that he had previously invoked his right to counsel but was not provided an attorney. (Def.'s Mot. Suppress at 2.) Those statements were relevant to Counts 2 and 3 of the

parties appeared before the court for an evidentiary hearing on the motion to suppress. Because Perry made new arguments at the hearing, the court ordered supplemental briefing. The parties submitted these supplemental briefs in September 2025, and the matter is now ripe for disposition.

## II.   STANDARD OF REVIEW

"In deciding a motion to suppress, the district court is empowered to make findings of fact, and conclusions of law." *United States v. Adkinson*, 191 F. Supp. 3d 565, 568 (E.D. Va. 2016) (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005)). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions[,] and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991). A defendant has the initial burden of proof on his motion to suppress, but once he establishes a basis for his motion, the burden shifts to the government to justify its actions. *See United States v. Matlock*, 415 U.S. 164, 177–78 (1974); *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). "The government bears the burden of proof in justifying a warrantless search or seizure," *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984)); *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013), and it must justify its search by a "preponderance of the evidence," *see Matlock*, 415 U.S. at 177 n.14 (noting that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

---

Indictment, but the court dismissed those Counts on May 30, 2025, on the government's motion. (ECF Nos. 51, 52.) As such, the only remaining issues pertinent this motion concern the search and statements made at the motel.

### III. ANALYSIS

Perry challenges the deputies' actions on multiple grounds. First, he argues that the arresting deputies violated his Fourth Amendment rights by searching the room—in which he claims he had a reasonable expectation of privacy—without a warrant. Second, Perry argues that he was not properly advised of his rights, as required by *Miranda v. Arizona*, prior to custodial interrogation at the motel. 385 U.S. 436 (1966). Third, he contends that even if he made the incriminating statements after the deputies had provided *Miranda* warnings, their coercive and threatening actions rendered his subsequent statements involuntary. Each argument is addressed in turn.

#### a. Fourth Amendment Claims

At the threshold, Perry contends that, because he had a reasonable expectation of privacy in the motel room, Sgt. Goines and Captain Terry violated his Fourth Amendment rights by conducting a warrantless search after his arrest. (Def.'s Mot. Suppress at 2.) The government counters that Perry waived his Fourth Amendment rights as a condition of his probation and, even if he did not, the deputies conducted the search in good-faith reliance on information provided by the probation officer that Perry had waived those rights. (*See generally* Gov'ts Resp.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" without a valid warrant. U.S. Const. amend. IV. To challenge a search on Fourth Amendment grounds, a defendant bears the burden of establishing a legitimate, reasonable expectation of privacy in the area searched. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Rawlings v. Kentucky*, 448 U.S.

98, 104 (1980); *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992). A reasonable expectation of privacy can extend beyond one's permanent residence, including to hotels or motels. *See Stoner v. California*, 376 U.S. 483, 490 (1964) ("A person renting a hotel room has a reasonable expectation of privacy in that room."). Even travelers who did not rent the room— overnight "guest[s] of a guest"—may also enjoy a reasonable expectation of privacy if they were more than "mere[ly] presen[t]" in the room. *United States v. Brooks*, No. 97-6-H, 1997 WL 327087, at *2 (W.D. Va. June 11, 1997) (citing *United States v. Grandstaff,* 813 F. 2d 1353, 1357 (9th Cir. 1987)); *see also United States v. Stein*, No. 2:21-cr-67, 2022 WL 1143522, at *4 (E.D. Va. Apr. 18, 2022) (concluding that defendant "had a reasonable expectation of privacy in the hotel room in which he was staying, regardless of the fact that another individual . . . booked the room."); *United States v. Gray*, 491 F.3d 138, 145 (4th Cir. 2007) (recognizing that overnight guests entrust a host with "the safety and security of both their persons and their belongings"). *Cf. United States v. Masi*, 135 F.3d 771, at *3 (4th Cir. 1998) (unpublished) (declining to find defendant had a reasonable expectation of privacy in a hotel room, as he did not rent the room and did not plan to stay overnight or have luggage to indicate as such).

At the evidentiary hearing, Perry failed to establish that he was entitled to a reasonable expectation of privacy as the *renter* of the room. There is no evidence in the record that would suggest, let alone prove, that he rented Room 251. To the contrary, the evidence presented suggested that someone else had rented the room. (Tr. at 9:9–11.) But that doesn't end the inquiry. At the hearing, Perry highlighted that photos of the motel room depict various forms of personal property—including duffel bags, clothing, and men's toiletries—that, he contends, prove that he was an overnight guest. (Def.'s Reply at 2–3 [ECF No. 56]; Tr. 40:20–41:18,

- 6 -

73:18–74:9.) Accordingly, Perry argues that he "had a reasonable expectation of privacy in the [motel] room . . . regardless of the fact that another individual . . . booked the room." *Stein*, 2022 WL 1143522, at *2.

The deputies' testimony corroborates this claim. Captain Terry testified that his team "had received information that it was possible that Mr. Perry was *residing* at this hotel, unspecific room at the time." (Tr. 53:4–6 (emphasis added).) Moreover, Sgt. Goines testified that "Mr. Perry is known to be in hotels, usually with a female, and *they rent him a hotel room* so it's not in his name." (Tr. at 9:9–11 (emphasis added).) This testimony, along with presence of bags of property that *may* have belonged to Perry, collectively cut in his favor. The totality of the circumstances indicate that Perry was more than "a mere casual visitor" in Room 251, but rather an overnight guest of a guest who could have had a reasonable expectation of privacy in the room. *Masi*, 135 F.3d at *3; *see also Stein*, 2022 WL 1143522, at *4.

But Perry waived his Fourth Amendment rights as part of his April 25, 2019 conviction on state charges that carried a term of probation, and he was still serving that probationary term when he encountered the deputies at the motel. The pertinent section of Perry's plea agreement reads:

> Fourth Amendment Waiver: During any period of probation imposed pursuant to his agreement, the defendant shall waive his Fourth Amendment right against unreasonable searches and seizures during the probation period, to wit: he shall submit his person, place of residence and property to search or seizure at any time of the day or night by any law enforcement officer *with or without a warrant*.

(ECF No. 53-1, at 2 (emphasis added).) It is well-established in the Fourth Circuit that, where a probationer has waived his Fourth Amendment rights as a condition of his release, "a

- 7 -

warrantless search of a person on supervised release is not unconstitutional." *United States v. Linney*, No. 19-4590, 2021 WL 4439161, at *4 (4th Cir. Sep. 29, 2021) (citing *Samson v. California*, 547 U.S. 842, 857 (2006)); *see also United States v. Knights*, 534 U.S. 112, 120–21 (2001); *United States v. Scott*, 941 F.3d 677, 684–85 (4th Cir. 2019); *United States v. Pickens*, 295 F. App'x 556, 558 (4th Cir. 2008); *United States v. Midgette*, 478 F.3d 616, 622–24 (4th Cir. 2007); *United States v. Plemmons*, 770 F. App'x 650, 652 (4th Cir. 2019); *Waldron v. United States*, No. 2:19-cv-00185, 2020 WL 2858553, at *6 (S.D.W. Va. June 2, 2020). Because Perry's plea was given "freely and voluntarily," he validly waived his Fourth Amendment rights while on probation as a condition of that plea, such that a search of the motel room would not offend Perry's constitutional rights.

At the evidentiary hearing, Perry claimed, for the first time, that the government could not rely on this waiver because it had failed to prove that he was still on active state probation and thus subject to this Fourth Amendment waiver at the time of the search.[4] (Tr. 84:22–24.)

---

[4] Specifically, the court and Perry's attorney shared the following exchange at the hearing, when discussing Perry's conviction and sentencing order, dated April 25, 2019:

> Q: "So why can't I take judicial notice of two years [of incarceration]?"
> A: "I think that the problem is [the order] says [probation begins] upon release, and we don't know when he was released. I think that it ignores pretrial credit. It ignores any other exceptions to time that would be served. I think the burden is on the government to show when he was actually released, and they haven't produced that. They've got to have something. You can take judicial notice if that's what it says, that –"
> Q: "But we don't know when he entered custody, and we don't know when he was released. . . . So the government hasn't proven in fact he was on probation."

(Tr. 85:3–17.) At the hearing, Sgt. Goines's testimony indirectly supported Perry's argument, as he stated that law enforcement databases and sentencing documentation do not always reflect if "people are released from probation early." (Tr. 44:16–17.) This testimony, however, cuts in favor of the government, as Sgt. Goines underscored that the possibility of early release drives law enforcement to verify the status of an individual's probation directly with the probation officer at the start of an investigation. (Tr. 44:18–19.)

Specifically, Perry highlights his initial judgment, which states that, after two years' incarceration, his three-year probationary term was "to commence upon release from incarceration, or unless sooner released by the Court or by the Probation Officer." (ECF No. 53-2, at 3.) At the evidentiary hearing, Perry seized on this "unless sooner" language to attempt to cast doubt on the premise that he was still on probation at the time of the search at issue. But Perry's Conditions of Probation Supervision, executed by Perry and his probation officer on March 26, 2021, reveal that Perry was released from incarceration on or about that date and began his term of probation immediately, with that term set to expire no sooner than March 23, 2024—or approximately nine months after the search at issue. (ECF No. 70-2, at 2.) Notably, upon signing the Conditions of Probation Supervision, Perry again acknowledged that he waived his Fourth Amendment rights. (ECF No. 70-2, at 1.) And Captain Terry testified that shortly before Perry's arrest, he had spoken to his probation officer about Defendant's status and the attendant Fourth Amendment waiver. In sum, the *actual* evidence presented conclusively refutes any notion that Perry had been released from probation early "by the Court or by the Probation Officer." (ECF No. 53-2.) Accordingly, the government has met its burden and established that, at the time of his arrest on July 31, 2023, Perry was still on probation and subject to the Fourth Amendment waiver.

Although not directly raised by Perry, the court further concludes that, if he waived his Fourth Amendment rights to his "residence and property" (ECF No. 53-1 at 2), he could not have expected to retain them in a motel room where he was, at best, an overnight guest. "[E]xpectations of privacy are at their apex in one's home, [but] they diminish considerably in nonresidential property." *Gray*, 491 F.3d at 145–46. Likewise, when individuals subject to

warrantless searches have moved to suppress evidence found on nonresidential property, courts in this Circuit have generally found the searches to be valid, citing *Gray*. *See United States v. Curtis*, No. 5:17-cr-11H(2), 2017 WL 5492020, at *7 (E.D.N.C. Oct. 10, 2017), *R.&R. adopted*, No. 5:17-cr-11-1H(2), 2017 WL 5492020 (E.D.N.C. Nov. 15, 2017); *United States v. Howard*, 523 F. Supp. 3d 611, 621 (W.D. Va. 2021); *see also United States v. Melvin*, No. 20-CR-61-RJA-JJM, 2023 WL 6529575, at *2 (W.D.N.Y. Mar. 13, 2023), *R.&R. adopted*, No. 20-CR-61-A, 2024 WL 1714524 (W.D.N.Y. Apr. 22, 2024) (finding *Curtis* and *Howard* instructive). A court in the Eastern District of North Carolina, for example, denied a defendant's motion to suppress evidence seized when he was apprehended in his girlfriend's home. *Curtis*, 2017 WL 5492020, at *7. Noting that the defendant's probation conditions subjected him to a warrantless search at reasonable times, the court held:

> In contrast to [probationers' privacy interests in their homes and persons], Defendant Curtis has even less of a privacy interest at stake here. For as Defendant's arguments imply, the privacy interest he seeks to vindicate through suppression is the privacy in his *girlfriend's* home. . . .
>     There is no evidence that Curtis had a privacy interest in that home at least on par with the privacy interest he would have in his own, approved residence. . . .

*Id.* at *6. Four years later, a court in this district relied on *Curtis* in reaching the same conclusion. When the defendant, subject to warrantless searches of his person and property, was apprehended in his friend's home, the court found no Fourth Amendment violation, observing that "[the defendant] is subject to a warrantless search condition and this search was not even in [his] home." *United States v. Howard*, 530 F. Supp. 3d 611, 621 (W.D. Va. 2021) (citing *Curtis*, 2017 WL 5492020, at *7). In essence, if Perry waived his Fourth Amendment rights in his own home—where his expectation of privacy is at its apex—he certainly could

not expect such protections to apply elsewhere, whether in a third party's home or a motel room.[5] *See United States v. Cervantes*, 859 F.3d 1175, 1182 (9th Cir. 2017) ("A probationer or parolee would reasonably understand the term 'residence,' when used in a search condition, to mean the place where he lives at the time of the search. He would not understand the term to encompass a place where he is merely a temporary overnight guest."). Therefore, the court finds that Perry has no basis to challenge the warrantless search of Room 251.

### i. Good-Faith Exception

But even assuming that Perry's Fourth Amendment waiver was no longer in effect, the good-faith exception to the warrant requirement would nevertheless permit the introduction of the evidence obtained from the motel room. Although the government is generally prohibited from relying on "evidence obtained by way of a Fourth Amendment violation," this "harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.'" *Davis v. United States*, 564 U.S. 229, 232, 241 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). The appropriate inquiry, then, is "'whether a reasonably trained officer would have known that the search was illegal' in light of 'all the circumstances.'" *Herring v. United States*, 555 U.S. 135, 145 (2009) (quoting *Leon*, 468 U.S. at 922 n.23). If reasonable, the "good-faith exception" applies, and fruits of the search will not be suppressed. *Leon*, 468 U.S. at 924.

---

[5] Moreover, the arresting deputies had reasonable suspicion to conduct the search. Perry was a convicted felon and was prohibited from possessing a firearm, but he had ammunition in his pocket. *See Knights*, 534 U.S. at 121–22 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

Although the Fourth Circuit has not specifically applied the good-faith exception in this Fourth Amendment-waiver context, the court concludes that it readily applies here. Indeed, logic and common-sense dictate that the good-faith exception extends to a warrantless search of a probationer's temporary place of residence, if law enforcement reasonably relies on information showing that he has waived his Fourth Amendment rights as a condition of his probation. *See, e.g.*, *Thurston v. Frye*, 99 F.4th 665, 677 n.12 (4th Cir. 2024) (cleaned up) ("As long as the previously issued warrant is not so facially deficient . . . that the executing officers cannot reasonably presume it to be valid, a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in executing it. That is because, in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."). Further, sister courts have held that an officer's good-faith reliance on a faulty Fourth Amendment waiver does not trigger the exclusionary rule. *See United States v. Crawford*, No. 122-104, 2023 WL 5155773, at *7 (S.D. Ga. July 7, 2023) ("The search was based on the reasonable belief that Defendant's Fourth Amendment probation waiver was valid because the sentencing judge imposed this special condition and signed the sentencing documents."); *United States v. Fencl*, No. 21-CR-3101, 2023 WL 116339, at *4 (S.D. Cal. Jan. 5, 2023). The court finds these cases persuasive and adopts their reasoning here.

In this case, the deputies clearly proceeded with a good-faith belief that Perry was on probation and subject to a Fourth Amendment waiver. At the hearing, Sgt. Goines testified that it is the deputies' "standard practice . . . [to] contact the courts and probation to make sure [the individual is] on probation, and if they're on probation, if they have an active Fourth

[Amendment] waiver." (Tr. 14:24–15:2.) Before initiating arrest, Captain Terry also followed this standard practice, testifying that:

> [P]rior to attempting to apprehend Mr. Perry, I contacted probation/parole and confirmed that he was still on probation, which was confirmed, and also I looked at his sentencing from where he was convicted of the original offenses and noticed that he had a Fourth Amendment waiver while on supervised release.

(Tr. 50:24–51:4.) Sgt. Goines testified that during their inquiry, the deputies contacted Perry's specific probation officer, rather than an officer less familiar with his probation status. (Tr. 9:20–22.) Under the circumstances—the probation officer's representations, Captain Terry's due diligence in verifying those representations, and the deputies' compliance with standard protocol—the deputies reasonably believed that Perry had waived his Fourth Amendment rights and that their search of the motel room was permissible given that waiver.[6] *See Herring*, 555 U.S. at 145. Indeed, both deputies explicitly testified that, because of Perry's Fourth Amendment waiver, they believed they had lawful authority to enter and search Room 251. (*See* Tr. 37:23, 47:13–48:3 (Sgt. Goines testifying that law enforcement has the authority to search an individual and their "immediate area" if there is a waiver of Fourth Amendment rights); Tr. 56:25–57:4 (Captain Terry answering that he believed he had authority to search the room "[b]ased on the Fourth Amendment waiver").) Ultimately, even if Perry was no longer on active probation or had not waived his Fourth Amendment rights—he was, and he did—the court would still deny the motion to suppress given the good-faith exception.

---

[6] The court recognizes that both deputies believed that Perry was wanted for a probation violation when, in fact, there were warrants out for Perry's failure to appear *and* probation violations. (Tr. 18:22; 20:3–19; ECF Nos. 70-1, 70-3.) While this disparity should be noted, it does not influence the court's analysis. Whether the deputies sought to arrest Perry based on a probation violation or failure to appear, they nevertheless verified that Perry was on probation and subject to a Fourth Amendment waiver. *That* information, not the nature of the warrants, was the material predicate for the search.

- 13 -

### b. Fifth Amendment Claims

Finally, the court turns to Perry's claims that he was not properly advised of his *Miranda* rights, and that the deputies' conduct otherwise rendered his admissions involuntary. (Def.'s Mot. Suppress at 1, 6–7.) Specifically, Perry asserts that (1) the deputies did not provide *Miranda* warnings prior to questioning him about the gun inside the motel room, and (2) Perry did not make his incriminating statements voluntarily, as he "believed" the deputies had him at gunpoint while they were advising him of his *Miranda* rights. (Tr. 88:8–9, 88:16.)

"*Miranda* warnings are required when an individual is subjected to custodial interrogation"; otherwise, a defendant's statements may be rendered inadmissible. *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995). When a defendant moves to suppress statements allegedly obtained in violation of *Miranda*, "the government bears the burden of establishing by a preponderance of the evidence that the statement was not obtained in violation of *Miranda*." *Colorado v. Connelly*, 479 U.S. 157 (1986). It is the government's burden to prove by a preponderance of the evidence that a defendant waived his *Miranda* rights knowingly and voluntarily before custodial interrogation. *United States v. Robinson*, 404 F.3d 850, 859 (4th Cir. 2005).

The court rejects Perry's first argument that the *Miranda* warnings were given only after he admitted to possessing a gun in the Nike bag in the room. The government presented the testimony of the two arresting deputies, both of whom the court found to be credible in all respects. That testimony established the following: Perry exited the bathroom backwards, following Sgt. Goines's orders (Tr. 33:1–12); he was placed in handcuffs at the door of Room 251 (Tr. 13:17–18, 14:6–8, 34:1–19); the deputies walked him 25 feet down a hallway, in

silence, to the top of the motel stairs (Tr. 35:17–19; 55:12, 56:8–10); and, at the top of the stairs, Captain Terry read Perry his *Miranda* rights before questioning him (Tr. 14:8–10, 34:17). Additionally, Captain Terry's written report, authored the day after the arrest, corroborates this sequence and that testimony. (ECF Nos. 53-4, at 3; 53-5; 53-6.) Perry did not offer any evidence that contradicted the deputies' testimony or nearly contemporaneous report. Perry, in sum, was properly *Mirandized* before he was questioned about the gun.

As to his second argument, Perry has not offered any evidence to rebut the government's showing that the incriminating statements made at the motel were provided voluntarily. Voluntariness is judged by the totality of the circumstances and must be "the product of free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002) (internal citations omitted). An involuntary waiver of *Miranda* rights is predicated on coercive police activity; however, "the mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary. The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination is critically impaired." *United States v. Purks*, 139 F.4th 388, 397 (4th Cir. 2025) (cleaned up) (quoting *United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017)). Courts have found coercion where law enforcement has pointed a loaded gun at a wounded detainee, deprived a detainee of sleep to force his waiver, or subjected a detainee to severe physical pain. *See Cristobal*, 293 F.3d at 140 (collecting cases).

Perry argues that his incriminating statements were coerced because, as his attorney claims, he believed that the deputies *may* have "had a gun pointed at him" once he was cuffed

and turned away from them.[7] (Tr. 87:19–24.) But this argument fails at the outset. For one, Perry has not offered any evidence that the deputies coerced his waiver in this manner; he merely *argues* a tenuous *possibility* of coercion. *See Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir. 1995) ("And, in addressing the admissibility of the confession, the Supreme Court of Virginia found that the conduct of the law enforcement officers was not even an issue because [the defense] . . . had [not] made any claim that coercive methods were employed to elicit the confession."). In any event, this naked supposition is belied by the evidence.

Sgt. Goines and Captain Terry testified that they used their weapons to facilitate the arrest—that is, they instructed Perry to exit the bathroom backwards, while at gunpoint, after Ms. Harvey said that he was in the bathroom with a gun. (Tr. 10:10–11, 12:21–22, 54:5–55:8, 67:1–9; Gov'ts Suppl. Br. at 5–6.) Perry's counsel does not contend that the deputies' use of firearms to extricate him from the bathroom was unjustified but asserts that Perry might have suspected that he was still being held at gunpoint when he was questioned. According to defense counsel, the deputies should have turned Perry around and shown him that they were not armed before reciting his *Miranda* rights. (Tr. 89:7–22.) But both deputies testified that they holstered their weapons after cuffing Perry and walking him to the end of the stairs—one deputy on each side—prior to delivering the *Miranda* warnings.[8] (Tr. 36:2–3, 35:17–19, 55:12, 56:8–10; Gov't Supp. Br. at 6–7.) The court finds that testimony to be credible and notes that nothing in the record suggests a different scenario. Without more, Perry has fallen

---

[7] While Perry was certainly under no obligation to testify—and the court makes no inference or judgment on his decision not to testify—it must be noted that there is no evidence that Perry believed he was at gunpoint.

[8] Sgt. Goines also testified that his empty hands were visible to Perry given how they were standing. (Tr. 36:2–3.)

well short of establishing the kind of "gross abuse" or "improper influence" that would render his statements involuntary. *Cristobal*, 293 F.3d at 140; *Purks*, 139 F.4th at 388. In sum, Perry was properly *Mirandized*, and his incriminating statements were voluntary. His motion to suppress will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the court will deny Defendant's motion to suppress in its entirety.[9]

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 16th day of October, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[9] The government argues that Perry has "reopened" his constitutional challenges to statements made before the magistrate and at the sheriff's office. (Gov'ts Suppl. Br. at 8–9.) At the hearing, the government conceded that those statements pertain to Counts 2 and 3 of the Indictment (which the government dismissed) but reserved the right to use the statements if Perry were to testify as to a different origin or ownership of the firearms. (ECF No. 52; Tr. 5:6–14.) But Perry has not testified to this effect, and importantly, the court did not use the statements he made at the sheriff's office to determine the issues above. If the government still wishes to use Perry's statements at trial, it can submit a motion *in limine* to the court to give both parties the opportunity to argue the constitutional issues attendant to the introduction of those statements during Perry's trial.